IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES K. BAKER,

        Plaintiff,

vs.                                                                      CIVIL NO. 10-1089 DJS/LFG

TURNER ENTERPRISES, INC.
and MARK KOSSLER,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER

THIS MATTER is before the Court on Defendants' Motion for Protective Order Prohibiting Plaintiff From Taking the Depositions of Ted and Beau Turner [Doc. 29]. Plaintiff James K. Baker ("Baker") filed a response in opposition on May 5, 2011 [Doc. 33]. Oral argument is not necessary.

### Background

Baker filed suit against Turner Enterprises, Inc. ("TEI") and Mark Kossler ("Kossler"), the ranch manager of TEI's Vermejo Park Ranch ("Vermejo"). Baker contends that Kossler harassed him and retaliated against him because Baker did not attend religious Bible study services sponsored by Kossler, and that Kossler falsely accused Baker's subordinates of violating hunting rules. Baker also asserts that Kossler unfairly criticized his job performance in an effort to pressure him into quitting. As a result of his concerns that Kossler would terminate him, Baker wrote to Ted and Beau Turner advising them he was resigning and demanding compensation of a quarter of a million dollars for the "humiliation and distress" he purportedly suffered at Kossler's hands.

Ultimately, Baker filed suit against TEI and Kossler, claiming breaches of the covenants of good faith and fair dealing, breach of contract, wrongful termination by constructive discharge, and negligent supervision.

## **Present Motion**

Baker seeks to take the deposition of Ted Turner, Chairman of TEI, and of Beau Turner, TEI's General Manager of eastern properties. Baker has yet to take the deposition of Kossler, the individual he accuses of wrongdoing.

The Turners seek a protective order under Fed. R. Civ. P. 26(c), and, pursuant to 18 U.S.C. § 1746, Ted Turner filed a declaration as part of Defendants' Motion for Protective Order. Turner advises that TEI manages his business interests, ranches, land holdings and investments, including the oversight of two million acres of land in twelve states and in a foreign country, together with more than 50,000 head of bison. [Doc. 29, T. Turner Decl., ¶ 1.]

Turner states that while the Vermejo ranch is one of the many ranches owned and run by TEI, he, as Chairman, is "not involved in the day-to-day or general management of Vermejo or its employees." [Doc. 29, T. Turner Decl., ¶ 2.] He further attests that oversight of employees and employee policies are managed by TEI's Human Resources Department. [Id.] Turner also indicates that he first learned of Baker's concerns by way of a letter [dated November 2009], addressed to him and Beau Turner, his son. In the letter, Baker advised that he was "forced to resign" and he would "miss the opportunity to work for [Turner] and [Turner's family]." [Doc. 29, T. Turner Decl., ¶ 3; and Baker's attached "resignation letter" to T. Turner Decl., at p. 2.] In his declaration, Ted Turner states that he was unaware of the matters contained in the resignation letter, which relate exclusively to alleged actions committed by or decisions made by Kossler. Turner concludes, "I neither directed nor participated in any investigation or inquiry conducted by TEI into Mr. Baker's allegations

2

contained in the Resignation Letter, as those duties are overseen by TEI's Human Resources Department." [Doc. 29, T. Turner Decl., ¶¶ 4, 5.]

Beau Turner, the second proposed deponent, also submitted a declaration pursuant to 28 U.S.C. § 1746. [Doc. 29, B. Turner Decl.]. His declaration is much the same as his father's in that he states TEI manages his father's business interests, ranches, land holdings and investments, including the oversight of the two million acres in twelve states and in Argentina, as well as the 50,000 bison head.. [Id., ¶ 1.] While Beau Turner is the General Manager of the eastern properties of TEI, he attests that he is not involved in the day-to-day or general management of Vermejo, a western property, or its employees. Indeed, the western ranches are under the general management of Russ Miller. [Id., ¶ 3.] Beau Turner is not involved in the day-to-day human resources issues or the oversight of employee policies at Vermejo, which are managed by TEI's Human Resources Department. [Id., ¶ 2.] He first learned of Baker's concerns regarding Kossler when he received a letter from Baker alleging that Kossler engaged in wrongdoing.

Upon receipt of Baker's resignation letter, Beau Turner avers: "I was unaware of the allegations contained in the letter, which relate exclusively to the alleged acts committed or decisions made by Kossler." He concludes by stating, "I neither directed nor participated in any investigation or inquiry conducted by TEI into Mr. Baker's allegations contained in the resignation letter as those duties are overseen by TEI's Human Resources Department." [Id., ¶¶ 4, 5.]

In response to Defendants' request for a protective order, Baker states that both parties consulted in good faith to set the deposition dates for Mr. Baker in early May, continuing with the

Turners' depositions in Atlanta several days later.[1] Baker summarily concludes, without any support, that "[t]he depositions of Ted and Beau Turner are absolutely necessary and essential for trying this case." [Doc. 33, p. 4.] Baker also argues that Beau Turner exercises "supervisory authority over Plaintiff." Baker asserts, again in conclusory fashion, that there are "ample factual allegations" that Ted and Beau Turner "enjoyed a personal, long term working relationship with Plaintiff spanning two decades; both Ted and Beau repeatedly requested information regarding the operation and management of Vermijo [sic] Park from Plaintiff and evidence will clearly show that Beau Turner acted in a supervisory role of Plaintiff Baker and offered to protect Plaintiff from any retaliation from Mr. Kossler." [Doc. 33, pp. 6-7.] Other than to state Ted Turner "enjoyed" a working relationship with Plaintiff, Baker makes no mention of how Ted Turner allegedly was involved in the matters giving rise to the lawsuit.

Baker claims to have attached affidavits from himself and his wife, Rita Malinowski that "are in direct conflict" with the Turner declarations. However, Plaintiff's response was filed without any affidavits or exhibits. A party must provide the Court with the information it wants the court to consider. *See, e.g.,* American Airlines v. Christensen, 967 F.2d 410, 415 n.8 (10th Cir. 1992) (court does not consider arguments not properly developed in the briefs). Thus, counsel's arguments that there are purported conflicts between Plaintiff's affidavit and the Turners' declarations are unsubstantiated and conclusory. *See* Pinkerton v. Colorado Dept. of Transp., 563 F.3d 1052, 1061 (10th Cir. 2009) (argument of counsel is not evidence).

---

[1] Baker implies that since Defendants agreed to take Baker's own deposition in Florida, taking the Turners' depositions in Georgia would not cause hardship, as the parties would all be present. However, by a separate ruling on May 6, 2011 [*see* Clerk's Minutes, Doc. 34], the Baker deposition was vacated and will be reset in the District of New Mexico at a later date.

**Analysis**

A court has authority under Rule 26 to enter a protective order to protect a party from "annoyance, embarrassment, oppression or undue burden or expense." The burden is normally on the party seeking protection from discovery to show good cause for the issuance of a protective order under Rule 26. Fed. R. Civ. P. 26(c)(1).

However, when a party seeks to depose a high level executive typically removed from the daily subject of the matter in litigation, the party seeking discovery first must demonstrate that the proposed deponent has "unique personal knowledge" of the matters at issue. Elvig v. Nintendo of America, Inc., 2009 WL 2399930, at *2 (D. Colo. July 31, 2009) (*citing* Baine v. G.M.C., 141 F.R.D. 332, 334 (M.D. Ala. 1991) and other cases). This is particularly true where the information sought can be obtained through interrogatories or deposition testimony of other individuals and also true because important executives "can be easily subjected to unwarranted harassment and abuse." Id. (internal citation omitted). *See* General Star Indemnity Co. v. Platinum Indemnity Ltd, 210 F.R.D. 80, 82-83 (S.D.N.Y. 2002) (courts grant protective orders for high-level executives where party seeks their depositions when that party has not yet attempted to obtain information from lower level executives, where high level executives plainly have no knowledge of the pertinent facts, or where the deposition was sought only to harass the executives).

Nonetheless, the Court acknowledges that high-ranking executives like the Turners are not automatically protected from discovery, nor are they entitled to a privilege to protect them discovery merely due to their position in the company. General Star Indemnity Co., 210 F.R.D. at 82-83. In making its determination, the Court considers whether the high level executive has unique personal knowledge about the controversy, the potential for harassment, the potential disruption of business to the company, and whether other lower-level individuals have access to the pertinent information.

Id.; Folwell v. Hernandez, 210 F.R.D. 169, 173-74 (M.D.N.C. 2002); Baine, 141 F.R.D. at 334. *See also* Fuerschbach v. Southwest Airlines Co., et al., No. CIV 03-540 RHS/LFG [Doc. 71] (D.N.M. Jan. 16, 2004) (analysis of whether high level executives could be deposed) (unpublished).

For example, in Patterson v. Avery Dennison Corp., 281 F.3d 676, 679 (7th Cir. 2002), the plaintiff similarly sought to depose a company's corporate vice president and comptroller who worked at the company's headquarters in California. The plaintiff's request was based on an e-mail from the vice president to the human resources office stating that he wanted human resources to look further into the plaintiff's allegations. Id. The district court allowed the depositions of the human resource director and the direct supervisors, but refused to compel the deposition of the high-ranking executive in a multi-national corporation who worked more than a thousand miles away from the facility in question. Id. at 681-82. In affirming, the appellate court reasoned that the plaintiff could have utilized other discovery mechanisms to obtain the information she sought. Id.

In this case, Baker did not convince the Court that either Ted Turner or Beau Turner have any unique personal knowledge regarding Baker's complaints. Indeed, both Turners indicate under oath that their only knowledge of Baker's allegations occurred upon receipt of Baker's resignation letter, which was obviously mailed to them after the alleged conduct at issue.

In addition, Baker did not make any showing, much less a *prima facie* showing, that Ted Turner has any involvement in this lawsuit other than the fact that he is the Chairman of TEI. So, too, Baker made no showing or a *prima facie* showing of Beau Turner's involvement in this lawsuit. Indeed, Beau Turner's sworn declaration indicates that he oversees TEI's eastern properties, and that Vermejo falls within the western properties managed by Russ Miller.

Most significantly, Baker has not taken Kossler's deposition, the individual he accuses of the wrongdoing. Clearly, the person with the most relevant information is Kossler, and Baker has

not taken his deposition to assess what pertinent information may be gathered from Kossler or other lower level supervisors. Nor has Baker taken the deposition of the western properties manager, who oversees Vermejo. The Court concludes that Baker failed to demonstrate that the Turners have "unique personal knowledge" of the matters at issue or that other sources or employees in the company would not be able to provide information relevant to the claims and defenses. Thus, at this stage of the litigation, it appears that the proposed Turner depositions will produce no useful information, and that Baker's reasons for seeking those high-level executive depositions are in question.

The Court concludes that Defendants have demonstrated good cause to support issuance of a protective order as to the Turner depositions. Moreover, Baker failed to show that either Ted Turner or Beau Turner have specific unique knowledge of the facts or that they personally participated in any of the actions that gave rise to this lawsuit.

IT IS ORDERED that Defendants' Motion for Protective Order is GRANTED. Thus, the Turner depositions will not be allowed to proceed.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge